```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

WILLIAM L. WRIGHT, III,        )
                               )
           Plaintiff,          )
                               )
     v.                        )
                               )   Civil Action No. 06-865
STATE CORRECTIONAL INSTITUTION )   Judge McVerry
AT GREENE, *et al.*,           )   Magistrate Judge Caiazza
                               )
           Defendants.         )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss filed by the Defendants be granted in part and denied in part.

### II. REPORT

William L. Wright, III ("Wright" or "the Plaintiff") is a state prisoner currently incarcerated in the State Correctional Institution at Greene, located in Waynesburg, Pennsylvania. In his Complaint, filed pursuant to the provisions of 42 U.S.C. §1983, Wright alleges a myriad of constitutional violations occurring during his incarceration. Presently before the court is a Motion to Dismiss filed by the Defendants (Doc. 56). Wright has responded to the Motion, and it is now ripe for disposition.

A. **The Basis of the Defendants' Motion**

The Defendants have not moved to dismiss all of the

Plaintiff's claims. Instead, they argue that: (1) several of the Plaintiff's claims are barred because he has already raised them in state court litigation; (2) the Plaintiff's "official capacity" claims should be dismissed; (3) the claims against Defendants Martin, Davis, Folino, James, Beard, Hall and Burks should be dismissed because the Plaintiff has failed to allege their personal involvement. Parenthetically, the claims against Davis, James, Hall and Burks will be dismissed under the *Rooker-Feldman* doctrine; (4) the claims against Defendants Meighan, Sacks, Balestreri, Barkefelt, Minardo, Folino, Beard, Zetwo, Mistrik, Armstrong, Esmond, Lipscomb and Grego in which that they purportedly failed to intervene in the alleged inappropriate hard cell activities of other defendants should be dismissed; (5) the Plaintiff's claim that he was denied food trays and water should be dismissed because there is no "concerted" action where others "aided and abetted"; (6) the Plaintiff's claim set out in Section B, Count I of the Complaint in which he states that "inclement weather" was only a pretense for denying outdoor exercise should be dismissed; and (7) Wright's claim that he was subjected to false misconduct charges should be dismissed.

## B. **The Applicable Standard**

The standard that a court applies with respect to a motion to dismiss filed pursuant to Rule 12(b)(6) is that dismissal is appropriate if no relief could be granted under any set of facts

that could prove consistent with the allegations in the Complaint. Hishon v. Spalding, 467 U.S. 69, 73 (1984); Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir.1986). Additionally, the Supreme Court recently clarified the Rule 12(b)(6) standard in Bell Atlantic Corporation v. Twombly. ___ U.S. ___, 127 S.Ct. 1955 (2007). Specifically, the Court "retired" the language in Conley v. Gibson, 355 U.S. 41, (1957), in which the court stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Twombly, 127 S. Ct. at 1968 (citing Conley, 355 U.S. at 45-46)). Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

## C. **The Analysis**

1. Rooker-Feldman.

The Defendants first assert that several of the Plaintiff's claims are barred because he raised them in a state court proceeding and was denied relief. The Defendants rely upon the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine holds that inferior federal courts lack subject matter jurisdiction 'over cases that effectively seek review of judgments of state courts and that federal review, if any, can occur only by way of a

certiorari petition to the Supreme Court.'" Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir.2002) (quoting Moccio v. New York State Office of Court Admin., 95 F.3d 195, 197 (2d Cir.1996)). Jurisdiction is also lacking where a plaintiff's claims before the district court are "inextricably intertwined" with the state court's determinations. Id. (citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n.16 (1983)).

"[I]nextricably intertwined" means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding, as either the plaintiff or defendant in that action, subsequent litigation of the claim will be barred under the *Rooker-Feldman* doctrine if it would be barred under the principles of preclusion. Moccio, 95 F.3d at 199-200.

The Third Circuit Court summarized the *Rooker-Feldman* doctrine in Exxon Mobil Corp. et al. v. Saudi Basic Industries Corp., 364 F.3d 102 (3d Cir.2004):

> The *Rooker-Feldman* doctrine . . . prevents lower federal courts from sit[ting] in direct review of the decisions of a state tribunal. Because Congress has conferred jurisdiction to review a state court's decision only on the Supreme Court, lower federal courts lack the power to decide claims in which the relief requested ... requires determining that the state court's decision is wrong ... [or where it] void[s] the state court's ruling. As we recently explained, a claim is barred by *Rooker-Feldman* under two circumstances: first, if the claim was actually litigated in state court prior to the filing of the federal action or, second, if the claim is inextricably intertwined with [the] state adjudication.

Id. at 104 (internal citations and quotations omitted); see also ITT Corp. et al v. Intelnet Int'l Corp. et al, 366 F.3d 205 (3d Cir. 2004). "A claim is inextricably intertwined with the state court adjudication when federal relief can only be predicated upon a conviction that the state court was wrong." Marran v. Marran, 376 F.3d 143, 150 (3d Cir.2004) (citations omitted). Rooker-Feldman does not "permit a disappointed state court plaintiff to seek review of a state court decision in the federal court by masquerading his complaint in the form of a federal civil rights action." Logan v. Lillie, 965 F. Supp. 695, 698 (E.D. Pa.1997). "If it were otherwise, any person dissatisfied with a state ... award could seek review in the district court under the guise of a federal civil rights violation." Id.

Here, Wright filed a state court Complaint in the Court of Common Pleas of Greene County, Pennsylvania, at A.D. No. 843, 2004, in which he raised several claims, both under Section 1983 and state law. The state trial court summarized the claims raised by Wright as follows:

> The complaint alleges that on seven different occasions in 2004, Plaintiff after first using his time at the law library was denied his yard privileges because the times allotted to him for those activities overlapped and he was denied any alternate or makeup exercise time.
>
> . . .
>
> He complains that the failure to afford him all statutorily mandated exercise time constitutes cruel and unusual punishment in violation of the

> Eighth Amendment, and that forcing him to forego his exercise time deprives him of his right to due process and equal protection in violation of rights secured for him by the Fourteenth Amendment . . . .

(Doc. 56, Ex. 13, at 2). The trial court sustained the Defendants' demurrer on September 2, 2005, finding that Wright failed to state a claim because: 1) no equal protection violation occurred because he received exercise yard time when he was the primary user of the law library and, therefore, was treated exactly the same as other inmates in his situation; 2) he was not denied procedural due process because he grieved his claims to the limits of the Department's grievance system; and 3) no due process violation occurred because Wright was "in segregation" and, accordingly, was entitled to no more than one hour of yard time per day five days per week. (Id., at 4-6). The trial court's rulings were affirmed on appeal on January 18, 2006 (Id., Ex. Q). The Supreme Court of Pennsylvania denied Wright's Petition for Allowance of Appeal on June 26, 2006 (Id., Ex. R).

The Defendants assert that the claims already litigated in the state courts encompass Wright's present claims concerning seven instances when he was allegedly forced to choose between law library time and exercise time (Counts I-VIII in Section A of the instant Complaint). It is clear that these claims are the same ones which have already been addressed by the state court, and further litigation of those claims is barred. Wright argues

that he is not seeking appellate review of the state court's decision. Rather, he is asking to enforce his right, as he sees it, to litigate his available remedies in both the federal and state courts (Doc. 58, at 7).

Without question, Wright may initially file his claims in either state or federal court. He is, however, not permitted to seek redress in federal court following a resolution of the same claims in state court. Any decision by this Court favorable to Wright would necessarily have caused this court to review a state court decision  -a result barred by the Rooker-Feldman doctrine.

The Defendants also assert that the part of Wright's Complaint in which he claims that he was denied access to his legal property  -Count I in Section C-  was also addressed in the state court litigation.  The record before this court does not establish whether this claim was raised in the state courts. As to this claim, the Defendants' Motion should be denied.

2. The Official Capacity Claims

The Defendants assert that any claims made against them in their "official capacities" should be dismissed since Section 1983 liability lies only against them on an individual basis. The Plaintiff argues that he has not made any "official capacity" claims.  He says that he is seeking to hold the named Defendants liable individually. To the extent that any part of Wright's Complaint can be interpreted as alleging an action against the

Defendants' based upon their official capacities, the Motion to Dismiss should be granted.

3. Personal Involvement

Defendants Martin, Folino, Beard, Davis, James, Hall and Burks seek to dismiss claims against them on the basis that the Plaintiff has failed to allege their personal involvement. Officials may be liable under Section 1983 for the acts of those over whom they have supervisory responsibility. However, supervisory liability may not be premised solely upon a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). Some personal involvement must be alleged. Id. Supervisory liability for Section 1983 violations can be established by evidence showing that officials: participated in violating a plaintiff's rights; directed others to violate a plaintiff's rights; knew of, and acquiesced in, their subordinates' violation of a plaintiff's rights; or knew of, and tolerated, past or ongoing misbehavior. Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 & n.3 (3d Cir.1995).

Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline to prevent violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach. Colburn v. Upper Darby

Township, 838 F.2d 663, 673 (3d Cir.1988), cert. denied, 489 U.S. 1065 (1989). However, at a minimum such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." Id. Wright asserts that he has properly pleaded claims against the moving defendants on the basis that they were aware of their subordinates' actions through grievances he filed and letters he sent to them (Doc. 58, at 10).

The fact that supervisory officials denied grievances or otherwise became aware of an alleged constitutional violation is insufficient to establish liability since this does not constitute action which communicates a message of approval or acquiescence. See, e.g., Jefferson v. Wolfe, 2006 WL 1947721, at *17 (W. D. Pa. 2006)(denial of grievance or appeal on final review insufficient to establish personal involvement in alleged underlying violation); Watkins v. Horn, 1997 WL 566080 at * 4 (E.D.Pa. 1997)(concurrence in an administrative appeal process is insufficient to establish personal involvement). Consequently, Wright's claims against Defendants Martin, Folino, Beard, Davis, James, Hall and Burks should be dismissed.

4. <u>The Failure to Intervene</u>

Wright also asserts that Defendants Meighan, Sacks, Balestreri, Barkefelt, Minardo, Folino, Beard, Zetwo, Mistrik, Armstrong, Esmond, Lipscomb and Grego failed to intervene in his alleged inappropriate placement in a "hard cell" by other named Defendants. Wright complains that, after his placement in the "hard cell" on February 24, 2005, he complained to these Defendants and that they failed to intervene.

Again, Wright is attempting to include as Defendants in his action not only the alleged perpetrators of the actual unconstitutional conduct, but also everyone else at the prison to whom he complained. In its most pure form, Wright's claim is premised upon the doctrine of *respondeat superior.* "Generalized allegations that certain prison officials failed to intervene to stop wrongdoing, do not demonstrate the personal direction of or acquiescence to that wrongdoing." <u>Young v. Medden</u>, 2006 WL 456274, at *23 (E.D.Pa. 2006). These claims, likewise, should be dismissed.

5. <u>The Concerted Action Claims</u>

In Paragraph 101 of the Complaint, Wright alleges that he was denied food trays, water, showers, law library access, mail, phone calls, and hygiene items by Defendant Schamp from February 25, 2005, through March 9, 2005. Wright next alleges that Defendants Bomberger, Anderson, Morris, Bowlin, Barkefelt,

Minardo, Armstong and Lipscomb "aided and abetted" Defendant Schamp, without alleging the manner in which these Defendants were involved with Schamp.

Although this is a narrow factual allegation, it is sufficient to place it "above the speculative level." Twombly, 127 S.Ct. at 1965. This part of the Defendants' Motion should be denied.

   6. The Inclement Weather Claims

Defendants challenge Section B, Count I of the Complaint in which Wright alleges that he was denied outdoor exercise on a "random basis from December, 2004 until February, 2005 under the Pretense of Inclement Weather." (Doc. 4. ¶88). The Defendants argue that no specific officer is identified as having denied exercise time, and that no Eighth Amendment claim is stated where the alleged deprivation is an "intermittent" loss of exercise yard privileges.

To state an Eighth Amendment claim, Wright must allege both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while the Defendants had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Wright alleges that he was denied outdoor exercise "randomly" over a period of three months, during the winter, on the basis of "inclement weather."

In order to state a claim, the conditions cited by an inmate

must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (internal citation and quotation omitted). Only "extreme deprivations" make out a conditions of confinement claim. Hudson v. McMillen, 503 U.S. 1, 8-9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993).

In applying this test, the Court acknowledges that "[t]he Constitution . . . does not mandate comfortable prisons." Wilson v. Seiter, 501 U.S. 294, 298 (1991). "In considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without those benefits." Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir.1982) (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)); see also, Castro v. Cheney, No. 97-4983, 1998 WL 767467, at *6 (E.D.Pa. Nov.3, 1998). The court may also consider the extent of any injury actually incurred to determine whether the deprivation is sufficiently serious to implicate the Eighth Amendment's prohibition. Cowans v. Wyrick, 862 F.2d 697, 700 (8th Cir. 1988).

Here, Wright disagreed with the decisions, on a few occasions, to deny him outdoor exercise. The substance of that allegation, standing alone, is insufficient to state an Eighth

Amendment claim. Specifically, Wright has not alleged any harm emanating from the denial of outdoor exercise, nor has he set out at least an approximate number of times he was denied outdoor exercise. Given the speculative nature of his claim and the relevant law, this claim should be dismissed. See Twombly, 127 S.Ct. at 1965.

   7. The False Misconduct Charges

The Defendants also seek to dismiss claims made by Wright in which he alleges that Defendants Santoyo, Schamp and Blaker filed false misconduct charges against him, resulting in his placement in administrative confinement. Wright alleges that this is a violation of the Eighth and Fourteenth Amendments.

A false misconduct charge does not itself qualify as an Eighth Amendment violation. Booth v. Pence, 354 F. Supp.2d 553, 559 (E. D. Pa. 2005). Wright asserts that the misconduct proceedings led to his being placed in administrative custody, and that, while there, he was denied food, water and a list of other necessities. Wright's claims for the deprivations allegedly visited upon him while in administrative custody, however, are separate from his claim in which he alleges that the misconduct report was false. That said, Wright concludes that his claims for deprivations while housed in a "hard cell" survive the Defendants' Motion to Dismiss. Nonetheless, the fact that a misconduct report may have been false -even intentionally- is

insufficient to state an Eighth Amendment claim. Id.

Further, no Due Process claim is stated when a prisoner alleges that misconduct charges were fabricated. Smith v. Mensinger, 293 F.3d 641, 653-654 (3d Cir. 2002)(due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports). This claim must necessarily fail as well.

8. The Mental or Emotional Injury

The Defendants assert that Wright has failed to allege anything -other than mental or emotional injury and that all of his claims must be dismissed for failure to allege the requisite physical injury.

Under 42 U.S.C. § 1997e(e), a prisoner can claim damages for mental or emotional injury only if he/she shows an accompanying physical injury. Section 1997e(e) provides, in pertinent part, that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The "physical injury" requirement of § 1997e(e) may be satisfied by a "less-than-significant-but-more-than-*de minimis* physical injury as a predicate to allegations of emotional injury." Mitchell v. Horn, 318 F.3d 523, 534 (3d Cir.2003).

Here, Wright asserts that he seeks no damages for mental or emotional injury (Doc. 58, at 19). Consequently, there is no need to rule on this portion of the Defendants' Motion. That said, the Plaintiff is precluded from raising this claim in this action

C. **Summary**

On the basis of this Report, it is respectfully recommended that the Motion to Dismiss filed by the Defendants (Doc. 56) be granted in part and denied in part. More specifically, all of the Plaintiff's claims relating to the seven instances when he was allegedly forced to choose between Law Library Time and Exercise Time (Counts I-VIII in Section A of the instant Complaint) should be dismissed, as should all claims made against named Defendants in their official capacities.  Supervisory liability claims against Defendants Martin, Folino, Beard, Davis, James, Hall and Burks should be dismissed, as well as claims against Defendants Meighan, Sacks, Balestreri, Barkefelt, Minardo, Folino, Beard, Zetwo, Mistrik, Armstrong, Esmond, Lipscomb and Grego made on the basis of a failure to intervene. Finally, the Plaintiff's "inclement weather" claim should be dismissed, as should claims against Defendants Santoyo, Schamp and Blaker for allegedly filing fabricated misconduct charges.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due

by September 4, 2007. Responses are due by September 14, 2007.


August 17, 2007                          s/Francis X. Caiazza
                                         Francis X. Caiazza
                                         United States Magistrate Judge

cc:
WILLIAM L. WRIGHT, III
DV-2181
S.C.I. at Greene
175 Progress Drive
Waynesburg, PA 15370-8089