IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM L. WRIGHT, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-865 |
| | ) | Judge McVerry |
| STATE CORRECTIONAL INSTITUTION | ) | Magistrate Judge Bissoon |
| AT GREENE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' Motion for Summary Judgment (Doc. 101) be granted.

### II. REPORT

William L. Wright, III ("Wright" or "Plaintiff") is a state prisoner currently incarcerated in the State Correctional Institution at Greene ("SCI-Greene), located in Waynesburg, Pennsylvania. Wright's Amended Complaint (Doc. 4), filed pursuant to the provisions of 42 U.S.C. § 1983, contains numerous claims against 40 named Defendants. Defendants' Motion to Dismiss (Doc. 56) was granted in part and denied in part, resulting in all claims against 11 of the named Defendants being dismissed[1]. The remaining claims in this case are:

(1) Defendants Santoyo and Gumbarvic (Count II of the Complaint, Doc. 10,

¶¶ 89-93) "verbally assaulted" and harassed Plaintiff on February 24, 2005, in the

law library, and Defendant Folino looked on "laughing";

---

[1] Defendants Davis, James, Hall, Burks, Luff, Campbell, Eutsey, Corbett, Cassidy, Grainey, and Esmond have been dismissed from this case (Doc. 65).

(2) Defendants Schamp, Bomberger, Anderson, Morris, Bowlin, Barekfelt, Minardo, Armstrong, Lipscomb, Gagnon, Lynch and Blaker denied Plaintiff food, running water, showers, mail, phone calls, etc., at various times during Plaintiff's confinement in a "hard cell," beginning on February 25, 2005, and ending on March 13, 2005 (Id., ¶¶ 101, 119, 127-130). Plaintiff was returned to his normal cell on April 7, 2005 (Id., ¶ 130);

(3) Defendants Thomas, O'Hara and Beard knew of these deprivations as they occurred and failed to take corrective action (Id., ¶ 106);

(4) Defendant Bomberger filed a false misconduct report (Id., ¶ 113)

(5) Defendant Mistrik denied Wright witnesses at his grievance hearing (Id., ¶¶ 114-116);

(6) Defendants Lynch, Gagnon and Frank "confiscated" seven boxes of legal materials on March 19, 2005, and attempted to have Plaintiff ship these items to his family (Id., ¶¶ 131-132). Plaintiff refused, and he was returned to his cell with only one box of personal property (Id., ¶ 132). This is alleged to have been done in retaliation for Plaintiff's filing of grievances and prior litigation;

(7) Defendant Martin denied Plaintiff a prison job on November 28, 2005, relying upon the prior false misconduct report filed by Bomberger (Id., ¶ 147).

The remaining Defendants now move for summary judgment (Doc. 101). Plaintiff has responded (Docs. 111-113)[2].

---

[2] Defendants also move for summary judgment with respect to a conspiracy claim they perceive, but Plaintiff states that he is not attempting to raise a claim of civil conspiracy (Doc. 111, p. 9). Likewise, Plaintiff states that he did not intend to name the State Correctional Institution at Greene as a Defendant in this case (Id.). Defendants Motion should be granted in both of these respects.

A. <u>Legal Standard</u>

A party's burden in response to a well-pleaded motion for summary judgment is to present ". . . specific facts showing that there is a *genuine issue for trial*" (Fed. Rule Civ. Proc. 56(e) (emphasis added)), or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. <u>Matsushita Elec. Ind. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u>, 477 U.S. at 251-52.

B. <u>Analysis</u>

    1.    **Claims (1)-(3) – Failure to exhaust administrative remedies.**

Plaintiff has failed to exhaust administrative remedies with respect to the first three of his remaining claims listed above. Under the Prisoner Litigation Reform Act ("PLRA"), the mandatory exhaustion provision requires the following:

> (a)    Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e(a). Before filing a civil action, a plaintiff-inmate **must** exhaust his administrative remedies. <u>Booth v. Churner</u>, 206 F.3d 289, 300 (3d Cir.2000), <u>cert. granted</u>, 531 U.S. 956 (2000), <u>aff'd</u>, 532 U.S. 731, (2001). There is no "futility" exception to the administrative exhaustion requirement. <u>Ahmed v. Dragovich</u>, 297 F.3d 201, 206 (3d Cir. 2002)(citing <u>Nyhuis v. Reno</u>, 204 F.3d 65, 78 (3d Cir. 2000)).

The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . ."). This is the functional equivalent of the procedural default requirement in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004). An untimely administrative appeal does not satisfy the exhaustion requirement. Woodford, supra. While a prisoner must comply with prison procedures, "compliance with the administrative remedy scheme will be satisfactory if it is substantial." Id., 204 F.3d at 77-78.

Claims (1), (2) and (3) listed above all occurred between the time Defendants Santoyo and Gumbarvic are alleged to have harassed Plaintiff in the law library on February 24, 2005, and the time that the deprivation of food and water ceased on March 13, 2005. Defendants move for summary judgment with respect to these claims arguing that Plaintiff failed to timely file grievances concerning these matters, barring these claims for failure to exhaust administrative remedies. Wright concedes that he did not file grievances concerning the law library dispute, his treatment while in the RHU, or the failure of Thomas, O'Hara and Beard to intervene. Wright states, however, that he was repeatedly denied grievance forms while in a hard cell (he was in the hard cell from February 25, 2005, through April 7, 2005), making the administrative remedy "unavailable" to him.

The Pennsylvania Department of Corrections Consolidated Inmate Review System provides for three levels of administrative review of inmate grievances: (1) the initial grievance submitted to the Facility Grievance Coordinator within 15 working days of the event; (2) an intermediate level of appeal to the Facility Manager; and (3) a final level of appeal to the

Secretary's Office of Inmate Grievances and Appeals. (Doc. 101-2, pp. 2-15); see also, Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir.2000) (outlining the grievance review process). Wright has provided an affidavit indicating that he was denied grievance forms during his time in a hard cell, and that this lasted until the 15-day period for filing a grievance had expired on his claims that he was denied food and running water (Doc. 111, ¶¶ 4-5).

Even accepting as true Plaintiff's assertions concerning his inability to obtain a grievance form until after the 15-day period had expired, this does not explain Wright's failure to ask for an extension of time to file a grievance, or his failure to even attempt to file a grievance out of time concerning these claims. See, e.g., Lyons v. Beard, 2009 WL 604139 (M.D.Pa., 2009) (Section VI of DC-ADM 804 provides that a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances); Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir.1999) (holding that plaintiff did not exhaust his administrative remedies because he filed an untimely grievance and did not request leave to file out-of-time for good cause).

"While the Third Circuit has recognized that 'compliance with the administrative remedy scheme will be satisfactory if it is substantial,' misfiling a grievance without ever following up or inquiring as to its status cannot be considered 'substantial.'" Naranjo v. Brooks, 2009 WL 792335, at *4 n. 8 (E.D.Pa. Mar.25, 2009) (quoting Nyhuis 204 F.3d at 77-78). Here, Plaintiff had an available procedure for seeking an extension of time to file a grievance, but he did not even attempt to invoke it. Plaintiff himself admits that he had a grievance form in hand on April 4, 2005, just a few days after the 15-day period for filing a grievance expired on his claims that he was denied food and water, but that he did not make any attempt to raise those claims. If the

5

actual preparation of a grievance, which is then misfiled, is not "substantial compliance" with prison administrative procedures (Naranjo), then Plaintiff's admitted failure to even attempt to file a grievance with respect to claims (1), (2) and (3) cannot possibly be deemed "substantial compliance." See also, Lee v. Lindsey, 2009 WL 1076390 (M.D.Pa., 2009) (appeal filed timely, but not on designated form). Plaintiff's claims (1)-(3) are barred since Plaintiff failed to even attempt to file grievances concerning these alleged constitutional deprivations.

**2. Allegedly fabricated misconduct report, and deficient misconduct proceedings.**

In Claims (4) and (5) listed above, Plaintiff alleges that Defendant Bomberger filed a false misconduct report against him on March 5, 2005, and that he was denied the opportunity to call witnesses during the hearing that followed. Specifically, on March 5, 2005, Bomberger and Corrections Officer Schamp overheard Plaintiff bragging about having defecated on a food tray. Bomberger confirmed with the kitchen staff that a tray had been returned with feces on it, and he filled out a misconduct report (Doc. 10, ¶115). Plaintiff was given a hearing at which he denied either having a food tray that day, or defecating on same, and the Hearing Examiner, Defendant Mistrik, credited Bomberger's version of events and found Plaintiff guilty. Plaintiff was assessed the cost of a replacement food tray. It is not clear whether Plaintiff asserts a violation of the Eighth Amendment, or a due process violation, or both.

Initially, Defendants assert that Plaintiff failed to exhaust administrative remedies concerning these claims by failing to file a grievance. However, issues arising during prison misconduct proceedings are expressly excluded from grievance review under DC-ADM 804, and must be appealed through DC-ADM 801, which applies to Inmate Discipline (Doc. 101-2, p. 14). Because Defendants have not presented any evidence concerning Plaintiff's exhaustion, or not, of the appeal process pursuant DC-ADM 801, these claims will be addressed on their merits.

A false misconduct charge does not itself qualify as an Eighth Amendment violation. Booth v. Pence, 354 F. Supp.2d 553, 559 (E. D. Pa. 2005).  Further, no Due Process claim is stated when a prisoner alleges that misconduct charges were fabricated.  Smith v. Mensinger, 293 F.3d 641, 653-654 (3d Cir. 2002) (due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports).  Indeed, all that is required of a misconduct proceeding is that the inmate be afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports.  Id.  Here, Plaintiff concedes he was provided with a hearing and that he denied the accusing officer's report.  Further, the requirements of due process are satisfied if some evidence supports the decision to sanction a prisoner.  Superintendent v. Hill, 472 U.S. 445, 455 (1985)).  This was a swearing contest between Plaintiff and the accusing officer.  Hence, there certainly was "some" evidence supporting Defendant Mistrik's decision.

Plaintiff's second contention is that he was not permitted to call witnesses at the hearing before Defendant Mistrik.  He alleges in his Complaint that he wished to call Defendants Bomberger and Schamp, as well as the kitchen manager who received the soiled tray (Doc. 10, ¶116).  This matter, however, was essentially a swearing contest between Plaintiff and Bomberger concerning what Bomberger overheard Plaintiff say.

In conducting the misconduct proceeding, the Fourteenth Amendment's guarantee of due process requires an examiner to grant the prisoner "an opportunity, when consistent with safety and correctional goals, to call witnesses and present documentary evidence in his defense." Walpole v. Hill, 472 U.S. 445, 454, (1985).  These protections, however, are relaxed in situations in which the inmate is faced with something less than the loss of a liberty interest. Flanagan v. Shively, 783 F. Supp. 922, 930 (M. D. Pa.) aff'd 980 F.2d 772 (3d Cir.1992).

7

Disciplinary hearings are not part of the criminal prosecution and are intended to be informal and expeditious. Id. Here, Plaintiff concedes that he was permitted to give his version of events, and he has not identified any relevant testimony which was excluded. An unfavorable decision, standing alone, is not a denial of due process. Griffin v. Spratt, 768 F. Supp. 153, 158 (E. D. Pa.1991) rev'd in part on other grounds, 969 F.2d 16 (3d Cir.1992).

### 3. Seizure of legal materials.

Plaintiff also asserts a claim for denial of access to the courts in connection with the removal of seven boxes of legal materials from his cell by Defendants Lynch, Gagnon and Frank (Claim (6) above), and the subsequent limitation to only one box of personal property in his cell. Defendants move for summary judgment on this claim on the basis of a failure to exhaust, but Plaintiff has produced what purports to be a grievance he filed on April 4, 2005, and an attempt to obtain a ruling from the Superintendent on April 25, 2005 (Docs. 111-3, 111-4). As such, there appears to be a material dispute of fact concerning whether Plaintiff attempted to exhaust administrative remedies concerning this issue, and whether this attempt constitutes "substantial compliance" with the applicable administrative procedures.

Nevertheless, to avoid summary judgment on his access to the courts claim, Wright must identify a non-frivolous claim that actually was impacted by the complained-of activity. Christopher v. Harbury, 536 U.S. 403, 415-17 (2002); see also Lewis v. Casey, 518 U.S. 343, 354 (1996). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." Christopher, 536 U.S. at 416; Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997) (no "actual injury" where court actually received prisoner's correspondence and considered his arguments).

8

Here, Plaintiff asserts generally that he has been unable to proceed with grievances and court proceedings (including this one) due to the seizure of his legal materials (Doc. 111, ¶ 51). Plaintiff further states that he has been "obstructed" from filing an unspecified amendment in this case, that he "lost" a "contemplated" litigation, and that he has been unable to "prepare for and proceed" with a pending capital habeas corpus proceeding (Id.).

As for the assertion concerning this case, Plaintiff has litigated it for almost three years, and has not missed a single deadline, or failed to respond to a motion, nor does he identify a specific pleading he was unable to file. Hence, his allegation of being denied access in this case is baseless. Further, Wright's other complaints of "obstruction" are entirely lacking in any relevant detail. Aside from his bald allegations, the record in this case is void of evidence suggesting that Plaintiff was unable to file a pleading in any legal proceeding due to the removal of some of the legal papers from his cell. In short, Plaintiff has failed to present evidence of any actual injury from the alleged denial of access to his records, and Defendants are entitled to summary judgment.

Plaintiff also asserts, however, that the decision to limit the amount of legal materials in his cell was made in retaliation for his past grievances and lawsuits. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). Retaliation is a separate claim, however, and prisoners must raise a specific claim of retaliation in their prison grievance in order to exhaust administrative remedies. Hoffenberg v. Provost, 154 Fed.Appx. 307, 311 (3d Cir. 2005) (retaliation claim must be presented and exhausted as separate claim from underlying assault claim).

Here, the grievance Plaintiff asserts he submitted on April 4, 2005, states only that the legal materials are necessary for his pending court proceedings (i.e., an access to the courts claim). Significantly, there is no allegation that Plaintiff is being denied access to these materials as a form of retaliation (Docs. 111-3, 111-4). Plaintiff, therefore, has failed to exhaust administrative remedies with respect to his claim of retaliation, and Defendants are entitled to summary judgment on that claim.

### 4. Termination of prison employment.

Finally, Plaintiff alleges in Claim (7) set forth above that Defendant Martin denied him the opportunity to hold a prison job in November, 2005, and that the decision was made on the basis of the "false" misconduct charges filed by Bomberger in March, 2005. Defendants move for summary judgment on this claim on the basis of a failure to exhaust, but Plaintiff has produced what purports to be a grievance he filed on December 5, 2005, and an attempt to obtain a ruling from the Superintendent on December 23, 2005 (Docs. 111-5, 111-6). Again, there appears to be a material dispute of fact concerning whether Plaintiff attempted to exhaust available administrative remedies, and whether that attempt constitutes "substantial compliance" with the applicable administrative procedures.

Moving to the merits, however, even if the underlying reason for termination of Plaintiff's prison job was a fabricated or false, Plaintiff has failed to state a due process claim because he has no constitutionally protectable interest in maintaining prison employment. Bryan v. Werner, 516 F.2d 233, 240 (3d Cir.1975) ("We do not believe that an inmate's expectation of keeping a particular prison job amounts either to a 'property' or 'liberty' interest entitled to protection under the due process clause."); James v. Quinlan, 866 F.2d 627, 630 (3d Cir.1989) (recognizing that inmates have no constitutional right to be assigned a particular job; an inmate's

expectation of keeping a specific prison job, or any job, does not implicate a property interest under the fourteenth amendment); Ayers v. Campbell, 267 Fed. Appx. 176, 177 (3d Cir.2008) ("due process violations are neither triggered by the loss of a prison job, nor by the loss of the possibility for parole") (citations omitted); Fidtler v. Pa Dept. of Corrections, 55 Fed.Appx. 33, 35 (3d Cir.2002) ("we have held that a state inmate does not have a liberty or property interest in prison employment").  Therefore, Plaintiff has no cognizable claim arising from the denial of prison employment.

     Plaintiff also states in his brief, although he does not allege in his Complaint, that Defendant Martin denied him a job in retaliation for his having filed grievances against her. Specifically, Plaintiff now avers that Martin informed him, after his prison job was terminated, that "this is what happens when you file grievances and lawsuits on me" (Doc. 111, ¶43).  No such claim is asserted in the grievance Plaintiff purportedly submitted on December 5, 2005 (Doc. 111-5).  Therefore, even if Plaintiff did file a grievance concerning the loss of prison employment, he failed therein to assert any claim of retaliation, and, as discussed above, has not exhausted administrative remedies with respect to such a claim.  Hoffenberg, supra, 154 Fed.Appx. at 311.

### III.    CONCLUSION

For all of the foregoing reasons, it is recommended that Defendants' Motion for Summary Judgment (Doc. 101) be granted.  In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by August 7, 2009.

s/ Cathy Bissoon
Cathy Bissoon
United States Magistrate Judge

Date: July 21, 2009

Cc:
WILLIAM L. WRIGHT, III
DV-2181
S.C.I. at Greene
175 Progress Drive
Waynesburg, PA 15370-808